*REDACTED PUBLIC VERSION*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

KAWS, INC.,

       Plaintiff,

v.

PRINTIFY, INC., JANIS BERDIGANS, and
JOHN DOES 1-10,

       Defendants.

Case No: 23-cv-24063- (GAYLES)

**DEFENDANTS PRINTIFY, INC. AND JANIS BERDIGANS' OPPOSITION**
**TO PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY**
**OF A TEMPORARY RESTRAINING ORDER AND ASSET RESTRAINT,**
**AN ORDER FOR EXPEDITED DISCOVERY, AND AN ORDER TO**
**<u>SHOW CAUSE FOR A PRELIMINARY INJUNCTION</u>**

*REDACTED PUBLIC VERSION*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.     STATEMENT OF FACTS ....................................................................................... 5

     A.    KAWS Hid Critical Details From This Court........................................... 5

     B.    Printify Gives Independent Merchants the Tools to Run Their Own
           Businesses. ............................................................................................... 6

     C.    Printify Has Already Made Significant Efforts to Remove from the Printify
           Platform Products KAWS Contends Infringe Its Intellectual Property. ................ 8

II.    LEGAL STANDARD .............................................................................................. 8

III.   KAWS HAS NOT MET ITS BURDEN................................................................... 8

     A.    KAWS Has Not Proven It Is Likely to Succeed on the Merits............................. 9

           1.    KAWS Is Unlikely to Prove Trademark Infringement. .............................. 9

           2.    KAWS Is Unlikely to Prove Copyright Infringement. ............................. 11

           3.    KAWS Has Not Shown a Likelihood of Success on Its Trademark-
                Dependent and State Law Claims. ............................................................ 13

           4.    KAWS Has Not Stated a Meritorious Claim Against Mr. Berdigans....... 14

     B.    KAWS Has Not Shown Imminent Irreparable Harm. ......................................... 14

     C.    The Balance of Harm Favors Printify................................................................. 16

     D.    The Public Interest Favors Printify.................................................................... 17

IV.   KAWS' REQUESTED INJUNCTION WOULD VIOLATE THE DMCA .................... 18

V.    THE BOND SHOULD BE RAISED SIGNIFICANTLY IF ANY
     INJUNCTION IS ENTERED ................................................................................. 20

VI.   CONCLUSION..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atari Interactive, Inc. v. Redbubble, Inc.*,
   515 F. Supp. 3d 1089 (N.D. Cal. 2021)....................................................................... 4, 9, 11

*Atari Interactive, Inc. v. Redbubble, Inc.*,
   No. 21-17062, 2023 WL 4704891 (9th Cir. July 24, 2023) ...................................... 4

*Athos Overseas Ltd. Corp. v. YouTube, Inc.*,
   No. 21-21698-Civ-Gayles/Torres, 2023 WL 5607936 (S.D. Fla. Aug. 29, 2023)............. 17, 18

*Brancheau v. Sec'y of Lab.*,
   No. 6:11-cv-1416-Orl, 2012 WL 1072227 (M.D. Fla. Mar. 29, 2012) .................................. 13

*Citibank, N.A. v. Citytrust*,
   756 F.2d 273 (2d Cir. 1985) ..................................................................... 15

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004) ................................................. 19

*Edmondson v. Velvet Lifestyles, LLC*,
   43 F.4th 1153 (11th Cir. 2022) ...................................................................... 14

*Evans v. Wurkin Stiffs, Inc.*,
   No. 16-61934-Civ-Cohn/Seltzer, 2016 WL 8793339 (S.D. Fla. Mar. 21, 2016).................... 10

*FHR TB, LLC v. TB Isle Resort, LP.*,
   865 F. Supp. 2d 1172 (S.D. Fla. 2011)..................................................... 16

*H&R Block E. Enterprises, Inc. v. JTH Tax, Inc.*,
   No. 05-20389-Civ-Martinez/Bandstra, 2005 WL 8155965 (S.D. Fla. Apr. 25, 2005) ............. 15

*Head Kandy LLC v. McNeill*,
   No. 23-cv-60345-Ruiz/Strauss, 2023 WL 6309985 (S.D. Fla. Sep. 12, 2023) ........................ 20

*Hydentra HLP Int. Ltd. v. Luchian*,
   1:15-cv-22134-UU, 2016 WL 5951808 (S.D. Fla. June 2, 2016) ............................................ 12

*Ideas, Inc. v. IAC/Interactivecorp.*,
   606 F.3d 612 (9th Cir. 2010) ................................................................. 19

*In re Aimster Copyright Litig.*,
   252 F. Supp. 2d 634 (N.D. Ill. 2002)....................................................... 18

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982) ............................................................................. 9

*Io Grp., Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008).................................................... 19

*Jerry Dickerson Presents, Inc. v. Concert S. Chastain Promotions*,
   260 Ga. App. 316 (2003) ...................................................................... 11

*KeyView Labs, Inc. v. Barger*,
  No. 8:20-cv-2131, 2020 WL 8224618 (M.D. Fla. Dec. 22, 2020) ............................................ 10

*Lynch v. Silcox*,
  No. 01-8800-CIV, 2001 WL 1200656 (S.D. Fla. Oct. 4, 2001) ............................................... 20

*McDonald's Corp. v. Robertson*,
  147 F.3d 1301 (11th Cir. 1998) .................................................................................................. 8

*Museum of Selfies, Inc. v. Miami Selfie, LLC*,
  No. 22-cv-20233-Bloom, 2022 WL 2390718 (S.D. Fla. July 1, 2022) .................................... 14

*Nivel Parts & Mfg. Co., LLC v. Textron, Inc.*,
  No. 3:17-cv-146-J, 2017 WL 1552034 (M.D. Fla. May 1, 2017) ............................................ 16

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*,
  896 F.2d 1283 (11th Cir. 1990) ................................................................................................ 14

*Palmer v. Braun*,
  155 F. Supp. 2d 1327 (M.D. Fla. 2001), *aff'd*, 287 F.3d 1325 (11th Cir. 2002) ............... 11, 16

*Pelland v. Antsy Labs, LLC*,
  No. 1:23-cv-02998, Dkt. 1 (D. Co. Nov. 13, 2023) .................................................................... 2

*Planetary Motion v. Techplosion*,
  261 F.3d 1188 (11th Cir. 2001) ................................................................................................ 16

*Rekal Co., Inc. v. PGT Indus., Inc.*,
  No. 8:13-cv-1433-T, 2013 WL 2407092 (M.D. Fla. June 3, 2013) .......................................... 10

*Restivo v. Pennachio*,
  No. 1:21-cv-23388-JEM, 2021 WL 5361072 (S.D. Fla. Nov. 5, 2021) .................................... 17

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*,
  188 F. Supp. 2d 1350 (S.D. Fla. 2002) ..................................................................................... 15

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) ............................................................................................. 8, 14

*Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*,
  909 F.2d 480 (11th Cir. 1990) ............................................................................................. 14, 15

*Strategic Mktg., Inc. v. Great Blue Heron Software*,
  No. 15-CIV-80032-Bloom/Valle, 2015 WL 11438209 (S.D. Fla. May 12, 2015) .................. 13

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  600 F.3d 93 (2d Cir. 2010) ....................................................................................................... 10

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*,
  229 F. Supp. 3d 1284 (S.D. Fla. 2017) ..................................................................................... 11

*United States v. Evans*,
  473 F.3d 1115 (11th Cir. 2006) ................................................................................................ 10

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ..................................................................................................... 12

*Wolk v. Kodak Imaging Network, Inc.*,
  No. 10 Civ. 4135(RWS), 2011 WL 940056 (S.D.N.Y. Mar. 17, 2011) ........................ 18, 19, 20

*Wreal, LLC v. Amazon.com, Inc.*,
  840 F.3d 1244 (11th Cir. 2016) ......................................................................................... 8

*Wright v. Scales 925 Atlanta, LLC*,
  761 F. App'x 884 (11th Cir. 2019) .................................................................................. 11

*Y.Y.G.M. SA v. Redbubble, Inc.*,
  No. 2:19-cv-04618-RGK-JPR, 2020 WL 3984528 (C.D. Cal. July 10, 2020) ............... 9, 10, 14

**Statutes**

17 U.S.C. § 512 ............................................................................................................... 18, 19, 20

**Rules**

Fed. R. Civ. P. 65(c) ............................................................................................................. 20

Fed. R. Civ. P. 65(d) ............................................................................................................. 16

Printify, Inc. ("Printify") is not a counterfeiter. It provides a software service that facilitates connections between millions of artists/small business owners ("Merchants") and print providers, who print the Merchants' work on the printer's blank products. Merchants sell the products ***they design*** on various independent websites such as Etsy, eBay, Walmart, and more.

Plaintiff KAWS, Inc. ("KAWS")[1] portrayed Printify to this court as a fly-by-night counterfeiter whose business practices necessitated not only a preliminary injunction, but an *ex parte* temporary restraining order ("TRO") and asset freeze. Br., 32–33. This is not the first time KAWS' counsel has told a court a legitimate company is a counterfeiter whose assets must be frozen. In at least 19 identified cases (excluding those involving Printify), it has filed nearly identical papers and followed the same playbook, including a complaint, motion to seal, and request for TRO and asset freeze with nearly verbatim supporting declarations.[2] While this thoughtless approach to such serious relief might work against smaller companies that are either real counterfeiters or cannot afford to defend, this pattern used against real companies that are not counterfeiters is starting to backfire in reported decisions and related judicial actions. At least one

---

[1] KAWS is the incorporated form of artist Brian Donnelly—who achieved fame by creating parodies of famous cartoon characters such as the Simpsons, Smurfs, Tom and Jerry, Snow White, and Sponge Bob Square Pants. Ex. C.

[2] *Atari Interactive, Inc. v. The Individuals et al.*, 1:23-cv-15724 (N.D. Ill.); *Believe Pursue LLC v. The Individuals et al.*, 1:23-cv-04474 (N.D. Ill.); *Hugo Boss TradeMark Mgmt. GMBH & Co. KG v. The Individuals et al.*, 1:23-cv-23329 (S.D. Fla); *KAWS, Inc. v. The Individuals, et al.*, 1:23-cv-03134 (S.D.N.Y.); *Kids Ride Shotgun Ltd. v. The Individuals et. al.*, 1:23-cv-04804 (N.D. Ill.); *Kyjen Co. v. The Individuals et al.*, 1:23-cv-15119 (N.D. Ill); *Life Vac LLC v. The Individuals, et al.*, 1:23-cv-02013 (S.D.N.Y.); *Opulent Treasures, Inc. v. The Individuals, et al.*, 1:23-cv-01283 (N.D. Ill.); *Goorin Bros., Inc. v. The Individuals, et al.*, 1:23-cv-05647 (N.D. Ill.); *Goorin Bros., Inc. v. The Individuals, et al.*, 1:23-cv-23405 (S.D. Fla); *KAWS, Inc. v. The Individuals*, 1:23-cv-15366 (N.D. Ill.); *Life Vac LLC v. The Individuals et al.*, 1:23-cv-14941 (N.D. Ill.); *Run-Tiger LLC d/b/a Run-Chicken v. The Individuals, et al.*, 1:23-cv-00774 (S.D.N.Y.); *Life Vac LLC v. The Individuals, et al..* 2:23-cv-06783 (E.D.N.Y.); *Liforme Ltd. v. The Individuals, et al.*, 1:23-cv-14195 (N.D. Ill.); *Opulent Treasures, Inc. v. The Individuals, et al.*, 1:23-cv-14142 (N.D. Ill); *Run-Tiger LLC v. The Individuals, et al.*, 1:23-cv-23185 (S.D. Fla.); *Tangle, Inc. v. The Individuals, et al.*, 0:23-cv-62094 (S.D. Fla.); *The Kyjen Co., LLC v. Individuals et al.*, 1:23-cv-00612 (S.D.N.Y.).

1

defendant that found itself the victim of this judicial practice has filed a separate action for what this really is: abuse of process.[3] In a nearly identical case KAWS' counsel filed in the Southern District of New York[4] just a few weeks ago against Printify, the esteemed New York federal judge there called out not only the plaintiff, Atari Interactive, Inc. ("Atari"), but specifically its counsel for having "snookered" him in the *ex parte* papers the plaintiff had filed. Ex. B, Hr'g Tr., 4:2–16 (Oct. 27, 2023). The same day Printify was given the papers in the Atari Action, KAWS filed a nearly identical set of papers against Printify in this Court. Although KAWs modified its request in this action, it did so the Monday after its counsel appeared at the hearing in the Atari Action. Of course, KAWS still did not tell this Court about the Atari Action, including that the judge was crucial of the same behavior KAWS had tried in this Court. It nevertheless maintained its request for an *ex parte* TRO and preliminary injunction. As the nearly identical Complaints portray, these matters are related and should be coordinated.[5]

KAWS claimed this case is so serious that not only was preliminary injunctive relief necessary, but a TRO should be entered without giving Printify notice or the opportunity to present its position. Yet, this case involves an estimated less than ███ in profit. KAWS never reached out to Printify—despite telling the Court it did—instead sending cease-and-desist letters to 73 independent Merchants, none of whom had a @printify.com email address. None of this was sent to Printify. Once Printify received the moving papers detailing the alleged infringement actions, it took responsible action to investigate and stop infringement. Not only did KAWS not give Printify notice of the alleged infringement before filing a Complaint, but KAWS originally filed their

---

[3] *See Pelland et al. v. Antsy Labs, LLC*, No. 1:23-cv-02998, Dkt. 1 (D. Co. Nov. 13, 2023).
[4] *Atari Interactive, Inc. v. Printify, Inc.*, No. 23-cv-08926 (SHS) (S.D.N.Y.) (the "Atari Action").
[5] Printify has filed a motion to transfer this case to the S.D.N.Y. because KAWS is a "New York corporation with its principal place of business is Brooklyn, New York." Dkt. 1, ¶ 13.

papers under seal, per KAWS' counsel's playbook, behavior which is completely inconsistent with a party that is actually in need of a preliminary injunction to immediately rectify purported harm. Regardless, in the less than three weeks since it learned of the supposed infringement, Printify has investigated the 73 stores KAWS identified and has removed more than ▮▮▮ products. Oleinika Decl., ¶¶ 31-40. KAWS has to-date been unwilling to work *with* Printify, instead proceeding through adversarial litigation. As a result of KAWS' strategy, Printify's investigation has relied on keyword-based searching using publicly available information. Printify is committed to working with rights owners such as KAWS to have content published by third parties removed from the Printify platform and is able to better remove content when the rights owners are willing to help those efforts. This investigation disproves KAWS' claims of immediate and irreparable harm (claims repeated verbatim in every case filed by KAWS' counsel). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even keyword searching revealed ▮▮▮▮ products (for context, Merchants have routed nearly ▮▮▮▮ products through Printify within the previous 12 months). And a review of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even this number is likely over-inflated because it does not consider whether some use is non-infringing because it is protected as fair-use or even licensed. Indeed, determining whether alleged infringement by third parties is in fact fair use is made even more difficult in this case because KAWS' own artwork heavily incorporates original artwork by others, such as the Simpsons or the Muppets. *See* Dkt. 1, ¶ 45 (showing apparent Muppet characters KAWS contends infringe its IP rights).

Printify will address the law in detail below, but Congress and courts have recognized platforms such as eBay, Amazon, Printify, and many others, cannot be liable for infringement, much less be preliminarily enjoined, absent being on notice of infringement, controlling

infringement, or otherwise having some requisite level of culpability. Based on the substantial evidence presented below there are millions of transactions taking place on these publicly available platforms. If companies like KAWS were to put platforms on notice and try to work with the platforms (as the law requires), infringement could be kept at bay and needless litigation avoided. But this is not the playbook. The scheme is aggressive litigation to threaten an empty statutory damage claim by using preliminary relief as a leverage point for settlement.

In the follow pages, Printify explains why KAWS has failed to satisfy its heavy burden to show preliminary injunctive relief is appropriate in this case. Critically, KAWS has misrepresented its likelihood of success on any claim. Courts have addressed the potential liability of print-on-demand companies like Printify. In 2021, the Northern District of California granted summary judgment in favor of print-on-demand company Redbubble on the issues of indirect copyright infringement, willful copyright infringement, and willful trademark infringement. *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1114-16 (N.D. Cal. 2021) (copyright), 546 F. Supp. 3d 883, 885 (N.D. Cal. 2021) (trademark). The Ninth Circuit affirmed this decision. 2023 WL 4704891, at *2 (9th Cir. July 24, 2023). The plaintiff proceeded to trial and lost on all issues. Ex. A. Yet KAWS hid from these decisions and did not even address them in its brief! Far from showing a substantial likelihood of success on its claims, KAWS offers no reason why the result will not be the same here. Although it may now try to address this authority in its reply brief for the first time (as it did in the Atari case) this authority at the very least proves KAWS cannot show a substantial likelihood of success on its trademark or copyright claims.

Through its counsel, KAWS has recklessly pursued an *ex parte* TRO and preliminary injunction by repurposing papers it has filed in numerous prior cases. The result of this mimicry is KAWS cannot: (a) meet its burden to show a substantial likelihood of success on any claim against

a platform like Printify as opposed to a counterfeiter; (b) establish irreparable harm if Printify is allowed to keep operating its platform; or (c) explain why an injunction that has been proposed nearly verbatim in several other litigations (and which amounts to an instruction to "stop infringing") is applicable to Printify. For these reasons, and those explained in detail below, Printify requests the Court deny the preliminary injunction.

## I.      STATEMENT OF FACTS

### A.      KAWS Hid Critical Details From This Court.

KAWS claims it sent Printify 73 notices prior to filing suit. Br., 2. It did not. KAWS instead appears to have sent take-down notices to independent sellers who may or may not use Printify's services. Oleinika Decl., ¶ 30. On October 24, 2023, KAWS filed the complaint, a motion to seal, and an *ex parte* motion asking the court to enter a TRO, freeze Printify's assets, and order expedited financial discovery. Dkts. 1, 3, 4. Six days later, KAWS filed an amended proposed order that withdrew its requests for expedited financial discovery and to freeze assets. Dkt. 15. KAWS did not inform the Court the reason *why* KAWS modified its request. It did not inform the Court that its counsel had filed a nearly identical[6] action against Printify in the Southern District of New York. *See* Atari Action. KAWS did not tell the Court that on October 27, 2023, the judge in the Atari Action held an emergency hearing on Printify's motion to modify the TRO or that he noted Boies Schiller was "a little aggressive here in terms of the TRO, now that I know more of the facts" and "was a little snookered on the *ex parte* application." Ex. B, 4:2–16.

The following Monday, KAWS simply modified its requests before this Court to remove the request for asset freeze and expedited financial discovery. Dkt. 15. It did not, however, withdraw its request for a TRO entirely or, more importantly, withdraw its request that the TRO

---

[6] *Compare* Dkt. 1 *with* Atari Action, Dkt. 14 (Complaint)

be issued *ex parte*. Neither did it inform Printify's counsel—who KAWS counsel had just seen in court days earlier—of this litigation. It instead allowed the Court to continue believing Printify was a fly-by-night counterfeiter, and an *ex parte* TRO should issue under seal.

### B.  Printify Gives Independent Merchants the Tools to Run Their Own Businesses.

Printify is an on-demand print service that plays a major role in enabling entrepreneurship in the United States by providing Merchants with tools to operate their own business. Oleinika Decl., ¶ 3. At its core, Printify is a SaaS provider. It offers a curated platform where Merchants can access blank products (e.g., t-shirts, sweaters, tote bags, etc.) from print providers. *Id.*, ¶ 4.

Printify also provides a software service that allows Merchants to upload their own designs in image form. *Id.*, ¶ 8. Before they can upload their own designs or apply it to a blank product using Printify's software, Merchants must first create an account and agree to Printify's Terms of Service and Intellectual Property Policy. *Id.*, ¶ 5. In doing so, Merchants agree to "not post or upload Content that infringes on the copyright or trademarks of others." *Id.*, ¶ 6. This entire design process—product selection, image upload/selection, and application of the image to the product— is entirely automated and no Printify employee is involved at any point. *Id.*, ¶ 10. After the Merchant has designed their product, the Merchant is responsible for preparing the product description. *Id.*, ¶ 11. Printify merely suggests a default title and description of the blank product. *Id.* This default description does not include any information about the artwork the Merchant applied to the blank product unless the Merchant adds it. *Id.*

These Merchants sell products they designed on Printify along with products they designed in other places on third-party platforms such as Etsy, Walmart, eBay, or on the Merchant's own website. *Id.* Merchants have the option to link these third-party storefronts with their Printify accounts. *Id.* When a Merchant has linked their third-party storefront, orders on the storefront can be automatically routed to Printify, who then passes the order on to an independent printer. *Id.*,

¶¶ 17–19. This process is entirely automated. *Id.*, ¶ 19. Approximately 

*Id.*, ¶ 15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*, ¶ 18.

Merchants can also choose to not link their storefront to Printify, in which case the Merchant would need to manually place an order within Printify for each order placed on the Merchant's independent storefront. *Id.*, ¶ 17. Again, however, the order process within Printify is automated. *Id.*, ¶ 19. No Printify employee reviews orders placed through the Printify system. *Id.* Because Merchants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.*, ¶ 23, such a review would be practically impossible. Moreover, it is impossible and unreasonable to expect any Printify employee to know all IP rights ever created and to police the Printify platform for any potential infringement regardless of whether Printify has been placed on notice.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ After Printify receives an order, the order gets automatically routed to an independent printer, who prints the Merchant's design on one of the printer's blank products using the printer's own equipment and materials. *Id.*, ¶ 20. The printer (not Printify) then performs quality control checks and arranges for the product to be shipped via an independent carrier. *Id.* As explained in the paragraph above, it is unreasonable to expect one person to know all IP rights by all third parties. This is further true because printers from across the world print Merchants' orders. These printers do not necessarily have the same culture or brand awareness required to recognize potential infringement.

### C.    Printify Has Already Made Significant Efforts to Remove from the Printify Platform Products KAWS Contends Infringe Its Intellectual Property.

KAWS never contacted Printify before filing this lawsuit. Oleinika Decl., ¶ 30. Nevertheless, after receiving the materials on October 24, 2023, Printify promptly investigated KAWS' claims, including the list of storefronts KAWS contends infringe its rights. *Id.*, ¶ 31. As detailed in the Oleinika Declaration, ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

## II.    LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy," and KAWS bears the "burden of persuasion" to clearly establish all four of these prerequisites. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). "A district court may grant injunctive relief **only if** the moving party shows: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel*, 234 F.3d at 1176 (emphasized) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

## III.    KAWS HAS NOT MET ITS BURDEN

---

[7] This method is more reliable than existing image-search software. *Id*., ¶ 38.

A.    **KAWS Has Not Proven It Is Likely to Succeed on the Merits.**

1.    **KAWS Is Unlikely to Prove Trademark Infringement.**

To prove Printify **directly** infringes, KAWS must show Printify "directly use[s] the trademarks." *Redbubble*, 515 F. Supp. 3d at 1101 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)). It has failed to do so. A party, such as Printify, "that merely facilitates or assists others' use cannot be liable for direct infringement." *Id*. Printify does not upload images or apply those images to products; Merchants do. Oleinika Decl., ¶ 9. Contrary to KAWS' unsupported claim, Printify does not "exercise significant control over the creation, manufacturing, and printing" of any product KAWS contends infringes its rights. Br., 6. Printify merely facilitates connections between Merchants, who create the design and choose to apply it to one of the print provider's blank product, and print providers, who manufacture, print, perform quality checks, and ship the printed products to Merchants' customers. Oleinika Decl., ¶¶8–22. Both Merchants and print providers are independent third parties. *Id*. ███████████████████████

██████████████████████████████████████████████████

███████. Oleinika Decl., ¶ 21. "Such a fee-based business model indicates the role of a service provider rather than a seller, as a seller almost invariably adjusts its price in relation to the value of the goods in question." *Y.Y.G.M. SA v. Redbubble, Inc*., 2020 WL 3984528, at *3 (C.D. Cal. July 10, 2020) (granting summary judgment in favor of print-on-demand company).

KAWS' motion does not even try to establish Printify uses the alleged trademarks in commerce. It should not be allowed to make these arguments for the first time in its reply brief (as it did in the Atari Action) and Printify reserves all rights to move to strike any such arguments. Regardless, Printify has established evidence showing Printify does not exercise control over the creation, sale, or manufacture of products through its platform. *See* Oleinika Decl., ¶¶ 8–22. This is reason enough to deny the requested preliminary injunction because KAWS cannot show a

substantial likelihood of success. *Rekal Co. v. PGT Indus., Inc.*, 2013 WL 2407092, at *2 (M.D. Fla. June 3, 2013) (finding "the Court is unable to ascertain whether [the movant] is likely to succeed on the merits of its claims" in trademark case when the "parties have filed conflicting evidence, including affidavits and declarations"); *KeyView Labs, Inc. v. Barger*, 2020 WL 8224618, at *8 (M.D. Fla. Dec. 22, 2020) (sub. history omitted) ("These factual disputes prevent [the movant] from establishing a substantial likelihood of success on the merits . . . ."). KAWS therefore has failed to show a likelihood of succeeding on any direct infringement claim.

Neither can KAWS show a substantial likelihood of success on any **indirect infringement** claim. Its preliminary injunction motion does not even try to meet this burden, instead only trying to portray Printify as a counterfeiter. Br., 20–23. KAWS cannot try to establish indirect liability for the first time in its reply brief. *United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court."). Regardless, because KAWS cannot show Printify exercised control over the appearance and content of the allegedly infringing products themselves it cannot show a likelihood of success on any claim for vicarious liability. *Y.Y.G.M. SA*, 2020 WL 3984528, at *9 ("To impose vicarious liability the shared control must extend in some way to the infringed intellectual property itself.").

KAWS also failed to show a substantial likelihood of success on any indirect infringement claim because it failed to show Printify knew or had reason to know any third-party was infringing KAWS' trademarks. *Evans v. Wurkin Stiffs, Inc.*, 2016 WL 8793339, at *7 (S.D. Fla. Mar. 21, 2016) ("[T]he knowledge needed to establish contributory liability must be specific or particularized; generalized knowledge that a site or service could be used for infringing activity is insufficient.") (citing *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 107–09 (2d Cir. 2010)). Although KAWS claims to have sent 73 cease-and-desist letters to Printify, it in fact sent those letters to

third-party Merchants, not Printify. Oleinika Decl., ¶ 30. KAWS cannot rely on statements from Printify's website or promotional materials that refer to it "partnering" with Merchants to argue Printify is charged with knowing what is sent to its customers. *Wright v. Scales 925 Atlanta, LLC*, 761 F. App'x 884, 888 (11th Cir. 2019) (holding the use of the label "partner" "'does not by itself demonstrate the existence of a legal 'partnership' and all the rights and obligations engendered thereby,' particularly when that label is used colloquially, as it was here.") (quoting *Jerry Dickerson Presents, Inc. v. Concert S. Chastain Promotions*, 260 Ga. App. 316, 323 (2003)).

KAWS does not offer any evidence or explanation as to why Printify purportedly uses the marks in commerce. It instead makes conclusory arguments that "Defendant's use of the KAWS Marks is likely to cause confusion." Br., 22. This is insufficient. *Tracfone Wireless, Inc. v. Simply Wireless, Inc*., 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017) (dismissing trademark claim where plaintiff provided only conclusory allegations to demonstrate likelihood of confusion). Rather than submit evidence, KAWS relies on one-sided factual allegations in its complaint. Br., 23 (citing Dkt. 1., ¶¶ 44–48). This cannot meet KAWS heavy burden to obtain preliminary injunctive relief. *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), *aff'd*, 287 F.3d 1325 (11th Cir. 2002) ("To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings.") (citation omitted). Regardless, these statements do not establish Printify is selling any products but instead discuss the online storefronts. Dkt. 1, ¶¶ 44–48. The storefronts are independent third parties. Oleinika Decl., ¶ 18. Whether the third-party storefront sells the products does not mean Printify does.

## 2.    KAWS Is Unlikely to Prove Copyright Infringement.

To establish copyright infringement, KAWS "must also establish causation, which is commonly referred to as the 'volitional-conduct requirement.'" *Redbubble*, 515 F. Supp. 3d at 1112 (citing *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019)). The Southern

District of Florida has previously required: to impose "liability upon an internet service provider for third-party users uploading of copyrighted material, Plaintiff must establish Defendants engaged in a volitional act to cause the illegal copying. To find otherwise would impose liability upon an otherwise passive internet service provider for conduct that is simply out of its control." *Hydentra HLP Int. Ltd. v. Luchian*, 2016 WL 5951808, at *9 (S.D. Fla. June 2, 2016). Because KAWS has failed to identify any such volitional conduct (or even address the requirement in its brief), KAWS has failed to show the required likelihood of success on its copyright claim. Nor could KAWS establish volitional conduct. Merchants upload images and apply those images to blank products owned by independent print providers. Oleinika Decl., ¶¶ 8–9. Printify merely provides a service to Merchants that connects them with print providers, who print, perform quality checks, and arrange for the products to be shipped to Merchants' customers. *Id*. Any activity by Printify is entirely automated. *Id*., ¶ 10. Moreover, any "actions" by Printify do not change based on what product or artwork is involved. *Id*., ¶ 19.

Neither does KAWS establish indirect copyright infringement. KAWS' motion does not attempt to establish indirect copyright infringement, instead focusing on the purported similarity between the Companion Copyright and the products sold by third-party Merchants. Br., 26–28. This is unsurprising because KAWS cannot show Printify: (1) had knowledge or reason to know of any third-party infringement <u>and</u> that Printify's website is not capable of substantial non-infringing uses; (2) Printify declined to exercise any right to stop or limit infringement of which Printify was aware; or (3) took purposeful, culpable expression and conduct to induce infringement. *Hydentra*, 2016 WL 5951808, at *15 (discussing standards for indirect copyright infringement). Printify's website is capable of substantial non-infringing uses as evidenced by the millions of Merchants who use Printify to support their own legitimate businesses. Printify did not

have any knowledge (nor should it) of the alleged infringement prior to this lawsuit. *Id.*, ¶ 30. Despite accessing Printify's IP-infringement reporting system, which provides clear instruction how to notify Printify of believed IP infringement, and 24/7 chat, KAWS chose not to notify Printify of any claimed infringement before filing this lawsuit. *Id.*, ¶ 25. Once it was aware, Printify took immediate action to identify and limit the purported infringement. *Id.*, ¶¶ 31–40. KAWS cannot establish any claim for indirect infringement in its reply. *Strategic Mktg., Inc. v. Great Blue Heron Software*, 2015 WL 11438209, at *5 (S.D. Fla. May 12, 2015) ("[C]larification in a responsive memoranda is insufficient to remedy the defect."). Finally, KAWS' brief does not mention the DMCA and its safe-harbor provisions, which, alone precludes the sort of injunctive relief sought here, as discussed below in Section V.

### 3. KAWS Has Not Shown a Likelihood of Success on Its Trademark-Dependent and State Law Claims.

Each of the remaining claims (trademark dilution, false designation of origin, and unfair competition under Florida law) require KAWS to show trademark infringement, which it has failed to do. Because KAWS has failed to show Printify uses the claimed trademarks in commerce, KAWS has also failed to state a claim for dilution. *Brancheau v. Sec'y of Lab.*, 2012 WL 1072227, at *2 (M.D. Fla. Mar. 29, 2012) (dismissing trademark dilution claim upon finding the plaintiff failed to adequately allege the defendant had "begun commercial use of its mark in commerce, or that it [was] about to do so.")

KAWS' claims for false designation of origin and unfair competition also depend entirely upon KAWS' trademark claim. *See* Br., 28 (conceding test for false designation of origin use "the same elements as a trademark infringement claim" and "the analysis is the same for Florida unfair competition and federal trademark infringement"). Because KAWS has failed to show it is likely to succeed on its trademark claim, it has also failed to show it is likely to succeed on its false

designation of origin and unfair competition claims. *Y.Y.G.M. SA*, 2020 WL 3984528, at *4 (granting summary judgment in favor of print-on-demand defendant on issues of false designation of origin and unfair competition after finding no trademark infringement).

### 4. KAWS Has Not Stated a Meritorious Claim Against Mr. Berdigans.

Because KAWS has failed to show it is likely to succeed on its claims against Printify, it has also failed to show it is likely to succeed on its claims against Printify's founder Mr. Berdigans. *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1163 (11th Cir. 2022). Beyond this, KAWS cannot show Mr. Berdigans is a moving, active conscious force behind Printify's alleged infringement, as would be required to prove individual liability. *Id.* at 1164. KAWS' contentions are conclusory and of the sort routinely dismissed at the pleading stage. *Museum of Selfies, Inc. v. Miami Selfie, LLC*, 2022 WL 2390718, at *5 n.2 (S.D. Fla. July 1, 2022) (dismissing claims against managers upon finding the complaint was "all conclusory and based upon information and belief without supporting factual allegations."). Printify is a large organization valued at more than $300 million and employs more than 600 people worldwide. KAWS takes issue with the business model of the company Mr. Berdigans founded, not any of his actions specific to the claimed infringement.

### B. KAWS Has Not Shown Imminent Irreparable Harm.

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Even if KAWS had shown a substantial likelihood of success on the merits—which it has not—"the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* (citing *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990)).

KAWS cannot show the irreparable harm necessary for an injunction to issue. "'[P]reliminary injunctions are generally granted under the theory that there is an urgent need for

speedy action to protect the plaintiffs' rights.'" *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355 (S.D. Fla. 2002) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)). KAWS has not explained why there is an urgent need. Despite KAWS not ever notifying Printify of the alleged infringement on Printify's platform, Printify has since investigated the 73 stores KAWS identified in the exhibits to its Motion. Oleinika Decl., ¶¶ 31, 36–39. Although not required by law, Printify then conducted an additional investigation and removed third-party products from the Printify database regardless of whether KAWS identified those products or the stores in which they were available. *Id.*, ¶¶ 33–35. KAWS therefore cannot show that absent an injunction it will suffer irreparable harm. *H&R Block E. Enterprises, Inc. v. JTH Tax, Inc.*, 2005 WL 8155965, at *3 (S.D. Fla. Apr. 25, 2005) (finding preliminary injunction request moot because defendant agreed to stop running the advertisements).

KAWS also cannot show irreparable harm because any minor damage could be remedied via monetary damages. "Financial damage alone is insufficient to warrant injunctive relief." *Seiko*, 188 F. Supp. 2d at 1355 (citing *Snook*, 909 F.2d at 487). Printify has determined it obtained less than ███████████ from services it provided to Merchants who sold products KAWS may contend infringe its rights. Oleinika Decl., ¶ 41.

Rather than attempt to explain what harm would befall KAWS absent an injunction and why it would be irreparable, KAWS relies on conclusory allegations of "diminished goodwill and confidence, reputational damages, loss of exclusivity, and loss of future sales" and cites decisions finding irreparable harm under the facts of unrelated cases. Br., 30. Although KAWS cites to paragraphs 22 through 26 of the Watanabe Declaration, those paragraphs are similarly conclusory statements that KAWS is irreparably harmed by Printify's actions. Neither Watanabe nor KAWS offer any explanation or support for their statements. *Palmer*, 155 F. Supp. 2d at 1331 ("Vague or

conclusory affidavits are insufficient to satisfy the plaintiff's burden" in obtaining an injunction.).

*FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1179 (S.D. Fla. 2011) ("[T]he claim that [plaintiff] would suffer incalculable loss of goodwill and damage to its reputation is speculative and vague."); *Nivel Parts & Mfg. Co., LLC v. Textron, Inc.*, 2017 WL 1552034 (M.D. Fla. May 1, 2017) (finding plaintiff "must provide more than mere speculation" to support claim of loss of goodwill and harm to reputation).

## C.     The Balance of Harm Favors Printify.

The proposed injunction is impermissibly broad and vague such that it does not place Printify on notice of what action is prohibited, amounting to nothing more than a direction to "stop infringement." *See* Dkt. 15, p. 4, ¶ 1(d) (prohibiting Printify from "further infringing the KAWS Trademarks or Companion Copyright). Such "obey the law" injunctions are uniformly disfavored and violate Rule 65(d)'s requirement that an injunction's terms be stated "specifically" and "described in reasonable detail . . . the acts restrained or required." *Planetary Motion v. Techplosion*, 261 F.3d 1188, 1203 (11th Cir. 2001) ("An injunction which merely forbids a defendant from performing "acts of unfair competition," or from "infringing on plaintiff's trademarks and trade secrets" adds nothing to what the law already requires.'"); Fed. R. Civ. P. 65(d). Subsections (b) and (c) similarly prohibit legal conclusions and should be rejected.

Moreover, to the extent the injunction is understandable, it is directed toward the conduct of a manufacturer/counterfeiter and not a SaaS company such as Printify. For example, paragraph 1(g) prohibits Printify from "shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for KAWS . . ." while subparagraph 1(f) prohibits "assisting, aiding, or abetting any other person or business entity in engaging in or performing" the same. Dkt. 15, pp. 4–5, ¶ 1(g). But Printify does not ship or deliver any items. It could nonetheless be

found to have violated a court order if a Merchant links their Etsy or eBay account (a process many Merchants do) to sell a single infringing t-shirt among 1,000 other products listed on the independent storefront and a printer provider prints or ships the product, even where the corresponding product description in Printify's database does not mention KAWS. Printify would need KAWS' assistance to identify infringing products and should be expected to perfectly distinguish between fair use and infringement. This is especially troubling in this case, where KAWS artwork uses artwork from other artists such as the Simpsons or the Muppets.

In contrast, the damages here are negligible as shown in Section IV(B) and any harm to KAWS is minimal at most and unspecified. If KAWS does ultimately succeed on its claims, which Printify contends it will *not*, KAWS can recover monetary damages—which likely will not be more than a few thousand dollars.

### D.      The Public Interest Favors Printify.

The public interest favors denying the preliminary injunction. Printify's platform is used by millions of small business owners that cannot afford to pre-purchase or store products and purchase their own printers that can print on these products in the hope of consumer demand. The public interest is not furthered by imposing an injunction that stops or even hinders Printify's business and interferes with the legitimate business of millions of independent businesses. Moreover, as discussed in more detail in the section below, the public interest is not served by shifting the "debilitating burden" of searching for infringing content to Printify, an ISP under the DMCA. *Athos Overseas Ltd. Corp. v. YouTube, Inc.*, 2023 WL 5607936, at *8 (S.D. Fla. Aug. 29, 2023). This is especially so considering KAWS failed to show any confusion, let alone confusion on a scale that would make this at all reasonable. *Restivo v. Pennachio*, 2021 WL 5361072, at *11 (S.D. Fla. Nov. 5, 2021) (holding "the public interest would not be served by the issuance of a preliminary injunction" because there was not sufficient confusion). For these reasons, the public

interest element weighs in favor of Printify and against granting an injunction.

## IV.    KAWS' REQUESTED INJUNCTION WOULD VIOLATE THE DMCA

As an independent reason, the injunction should be denied because it violates the DMCA. *Athos Overseas,* 2023 WL 5607936 at *8; *Wolk v. Kodak Imaging Network, Inc.*, 2011 WL 940056, at *9 (S.D.N.Y. Mar. 17, 2011). For Printify to fall within the DMCA's safe harbor provision, it must: (1) be a service provider as defined by the statute; (2) have adopted and reasonably implemented a policy for the termination in appropriate circumstances of users who are repeat infringers; and (3) accommodate and not interfere with standard technical measured used by copyright owners to identify or protect copyrighted works. 17 U.S.C. §§ 512(i).

Printify meets these requirements. It provides online services that connect Merchants with third party print providers who print Merchants' designs onto products owned by the third-party print providers. Indeed, courts have found "'service provider' is defined so broadly that [the court would] have trouble imagining the existence of an online service that would not fall under the definition…." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 658 (N.D. Ill. 2002). Printify has also met the second requirement because it has adopted, implemented, and informed users of the Printify Intellectual Property Policy, which provides it is Printify's "practice—in appropriate circumstances and at our discretion—to either disable or terminate the accounts of Users who infringe or are repeatedly charged with infringing copyrights or other intellectual property rights of others." Oleinika Decl., ¶ 27. Printify also accommodates and does not interfere with standard technical measures copyright owner use to identify or protect their works. *Id.*, ¶ 28.

Printify therefore falls within the DMCA's safe harbor provision and may qualify for protection under § 512(c) if it meets the requirements of that section. 17 U.S.C. § 512(c)(1)(A)–(C). Printify has done so. First, it did not have any actual knowledge of the claimed infringement and was not aware of any facts or circumstances that would have made the claimed infringing

activity apparent. Oleinika Decl., ¶ 30. The image upload, design application, and ordering processes are all automated. *Id.*, ¶ 10. Moreover, KAWS chose not to notify Printify, instead choosing to file this lawsuit. *Wolk*, 2011 WL 940056, at *6 (finding no knowledge without having received pre-suit notice). Upon becoming aware when KAWS filed this lawsuit, Printify acted expeditiously to identify and remove the material. It immediately investigated the 73 stores KAWS identified in the exhibits to this motion and shortly after had gone above what the law requires, ███████████████████████████████████████████. Oleinika Decl., ¶¶ 31–40.

Second, Printify does not have the right and ability to control the allegedly infringing activity. "[T]he right and ability to control infringing activity 'as the concept is used in the DMCA, cannot simply mean the ability of a service provider to block or remove access to materials posted on its website or stored on its system." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1110 (W.D. Wash. 2004) (quotation omitted), *rev'd on other grounds*, *Cosm. Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 616 (9th Cir. 2010). "Rather, such a right and ability to control may take the form of prescreening content, providing extensive advice to users regarding content, and editing user content." *Wolk*, 2011 WL 940056, at *6 (citing *Corbis*, 351 F. Supp. 2d at 1110). Printify does not take any of these actions. Moreover, courts have previously found where "hundreds of thousands" of pieces of content had been uploaded "no reasonable juror could conclude that a comprehensive review of every file would be feasible." *Id.* (citing *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1153 (N.D. Cal. 2008)). Here, there are more than ███ ███████████ that would need to be reviewed with ██████ more being uploaded every day.

Third, Printify has designated an agent to receive notifications of claimed infringements. *See* Oleinika Decl., ¶ 28; Ex. 1. Because Printify qualifies for § 512(c)'s safe harbor, the only relief available to KAWS is provided by § 512(j). *Wolk*, 2011 WL 940056, at *7. KAWS' requested

relief drastically exceeds the limited relief allowed under § 512(j) and its injunction request should be denied. Moreover, KAWS' requested injunction omits the written communication KAWS must provide under 17 U.S.C. § 512(c)(3)(A)-(B) and must also be denied on this basis.

## V.    THE BOND SHOULD BE RAISED SIGNIFICANTLY IF ANY INJUNCTION IS ENTERED

A court may "issue a preliminary injunction or a temporary restraining order only if the movant gives security ***in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained***." Fed. R. Civ. P. 65(c). As part of its *ex parte* TRO motion, KAWS initially requested to post only a nominal bond of $10,000, presenting this matter as a straightforward case of a small-time counterfeit-goods seller. Br., 31. It later asked the Court to *reduce* the bond to $5,000. Dkt. 15.

District courts can increase the bond amount between a TRO and a preliminary injunction. *Lynch v. Silcox*, 2001 WL 1200656, at *6 (S.D. Fla. Oct. 4, 2001) (increasing bond from $10,000 to $100,000 as condition for entry of preliminary injunction). Because the specific amount of the bond that would be required would depend on the scope of any injunction that would issue (i.e., what precisely Printify would need to do on an on-going basis), Printify respectfully requests leave to submit additional briefing on this issue should the Court determine any injunction is necessary. *Head Kandy LLC v. McNeill*, 2023 WL 6309985, *19 (S.D. Fla. Sep. 12, 2023) (ordering parties "to confer as to the amount of a proper bond and, absent an agreement, provide the Court with supplemental briefing on the issue of a bond."). As noted above, KAWs' requested injunction is too vague to allow Printify to understand exactly what actions would be prohibited.

## VI.    CONCLUSION

For the foregoing reasons, Printify respectfully requests the Court deny KAWS' request for a preliminary injunction.

Dated: November 21, 2023

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Erica Baines*
Erica Baines, 58121(FL)
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500 Telephone
(312) 655.1501 Fax
erica.baines@huschblackwell.com

Rudolph A. Telscher, Jr., 41072(MO)*
Kara Fussner, 54656 (MO)*
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
(314) 480-1500 Telephone
rudy.telscher@huschblackwell.com
kara.fussner@huschblackwell.com

Dustin L. Taylor, 54463(CO)*
1801 Wewatta St., Suite 1000
Denver, CO 80202
(303)-749-7200 Telephone
dustin.taylor@huschblackwell.com

*admitted pro hac vice*

**Attorneys for Defendants Printify, Inc.**
**and Janis Berdigans**

21

***REDACTED PUBLIC VERSION***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of November 2023, I caused the foregoing to be filed electronically with the Clerk of the Court, and therefore served upon all counsel of record. The unredacted version of this filing was served upon all counsel of record via electronic mail.

<em><u>/s/ Erica Baines</u></em>

HB: 4862-0561-6272