UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-cv-24063-GAYLES

KAWS, INC.,

    Plaintiff,

v.

PRINTIFY INC,
JANIS BERDIGANS,
and JOHN DOES 1–10,

    Defendants.
    _____/

## ORDER

THIS CAUSE comes before the Court on Plaintiff KAWS, Inc.'s *Ex Parte* Motion for Temporary Restraining Order, Asset Restraint, Expedited Discovery, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue. (the "Motion"). [ECF No. 4]. The Court has considered the Motion and the record and is otherwise fully advised. As set forth below, the Motion is denied.

### BACKGROUND[1]

Plaintiff KAWS, Inc. ("KAWS") contends that Defendant Printify Inc. ("Printify") and its founder, Defendant Janis Berdigans ("Berdigans"), infringed on KAWS's intellectual property via Printify's print on demand ("POD") service and seeks to enjoin Printify from using its trademarks pending resolution of this lawsuit. The key inquiry for the Court is whether Printify's actions constitute actionable "use" of KAWS's trademarks.

---

[1] The background facts are taken from the evidence submitted at the hearing on December 5, 2023, and January 9, 2024, on KAWS' request for a preliminary injunction.

1

I.      **Printify's Business Model**

Printify provides its customers—deemed "Merchants"—with tools to operate their own businesses. These tools allow Merchants to (1) upload images to blank products which are printed by third-party print providers and (2) publish the custom products to sales channels including Esty, Shopify, Walmart, eBay, and Printify's own "pop-up" store. Printify is not a printer. Rather, as detailed below, Printify connects Merchants with third-party print providers.

A.      **Terms of Service**

Before using Printify's services, prospective Merchants must first create an account with Printify and agree to Printify's Terms of Service, Privacy Policy, and Intellectual Property Policy ("Terms"), whereby they agree to not post or upload content that infringes on the copyright or trademarks of others. [ECF No. 44-2]. Once their accounts are open, Merchants can begin designing products.

B.      **The Design Process**

Merchants begin the design process by selecting a type of product—t-shirt, phone case, etc.—from third-party print providers' catalogs of products. Merchants then have the following options to add a design to the product: (a) upload their own saved design from their computer or from cloud storage such as Dropbox or Google Drive, (b) generate a design using AI, (c) add custom text, (d) hire a professional designer on Fiverr, or (e) add an image from Shutterstock, a third-party image platform that is integrated with Printify's website. The entire design process, including product selection, image upload/selection, and application of the image to the product, is fully automated without any involvement by Printify's employees. Printify does not supply

Merchants with any images.[2] If Merchants choose to add an image via Shutterstock, they must agree to Shutterstock's terms of use which provides that all Shutterstock content is licensable for commercial use. Printify has no control over Shutterstock or the content of its image database.

Once Merchants upload their design, Printify provides them with a default title and description of the product. The default title and description are focused on the type of product, such as unisex crewneck sweatshirt made from cotton, and does not include any details about the image or design applied to the product. As a result, Printify's internal descriptions of Merchants' custom products do not include any details about the images added to the products unless a Merchant chose to provide those details to Printify. Merchants then publish their products to Printify's internal database of available products for purchase, which enables them to place an order.

C.   **Product Sales**

Merchants have several options to sell their newly designed products.  They may sell their products in traditional brick and mortar stores. They may also connect their Printify accounts to several third-party online marketplaces, such as Etsy, eBay, TikTok, Walmart, or independent domain websites. Merchants can also select Printify's Pop-Up store as a sales channel.[3] Printify does not control any Merchant's storefront and does not have the ability to remove infringing products from a Merchant's storefront.

When a customer places an order for a Merchant's custom product, Printify automatically routes the order to one of several third-party print providers. The print provider uses its own machines and equipment to print the custom product and checks the quality of the print job based

---

[2] Printify maintains a central repository of all images uploaded by Merchants, including those created by Merchants, obtained from Shutterstock, or generated by AI (the "Image Repository"). Merchants cannot access the Image Repository.
[3] Only a small percentage of Merchants utilize Printify's Pop-Up store.

on its own internal practices.[4] The custom product does not bear Printify's name or logo. Printify does not review or conduct quality checks on printed orders.

Merchants set the retail prices for their custom products. Printify has no control over a Merchant's retail prices, and the fees Merchants pay Printify are fixed and not dependent on their retail prices.

Once printing is complete, a shipping carrier ships the product from the third-party print provider directly to the end consumer. Orders are not routed through Printify, and Printify does not control the shipping process. For each order, the merchant chooses the return address for the mailing label; and neither the packaging nor the product identifies Printify as having any role in the production or shipping.

## II.   The Alleged Infringement

KAWS is the owner of several federally registered trademarks and copyrighted works. It is undisputed that KAWS has the exclusive rights to use the KAWS's Trademarks in commerce. KAWS contends that Printify and Berdigans provide Merchants with KAWS's trademarked content and participate directly and indirectly in the infringement of KAWS marks. Between October 13, 2023, and October 18, 2023, KAWS's counsel sent, via email, seventy-three cease-and-desist letters to e-commerce storefronts KAWS believed to be associated with Printify. [ECF No. 6 ¶ 1]. Printify did not receive the cease-and-desist letters and was not otherwise contacted by KAWS or its counsel before filing this action.

Once Printify was notified of this action, it took steps to remove the infringing information from its website and block infringing Merchants from fulfilling customer orders via Printify's system, including (1) reviewing a sample of 10,000 products from all Merchants for potential

---

[4] Printify will occasionally order samples with complex designs from the third-party print providers to understand the quality that the third-party printers provide.

matches against KAWS' trademarks, (2) conducting keyword searches in Printify's database against product names and descriptions, and (3) identifying Merchants using information from KAWS.[5] Based on its search, KAWS identified 32 products from 12 Merchants that potentially infringed on KAWS trademarks—of which 11 were linked to items created by KAWS's counsel for purposes of this lawsuit.[6] Printify removed the products.

### III. This Action

On October 24, 2024, KAWS filed this action against Printify, Berdigans, and John Does 1-10[7] (collectively "Defendants") alleging claims for trademark infringement and counterfeiting, in violation of 15 U.S.C. § 1114 (Count I); trademark dilution, in violation of 15 U.S.C. § 1125(c) (Count II); false designation of origin, in violation of 15 U.S.C. § 1125(a) (Count III); copyright infringement, in violation of 17 U.S.C. § 101, et seq. (Count IV); and common law unfair competition (Count V). [ECF No. 1]. KAWS also moved, *ex parte*, for a temporary restraining order, asset restraint, expedited discovery, and order to show cause why a preliminary injunction should not issue. [ECF No. 4]. The Court issued the temporary restraining order[8] and set an evidentiary hearing on KAWS's request for a preliminary injunction, which occurred on December 5, 2023, and January 9, 2024. [ECF No. 15].

---

[5] Of the eight-and-a-half million products on Printify's website, the keyword searches (removing false positives) identified 2,456 hits. This accounted for only $13,491 in revenue, of which Printify earned $1,841 in profit.
[6] In conjunction with this lawsuit, KAWS's counsel created a Printify Pop-Up store and uploaded KAWS images from the integrated Shutterstock link.
[7] In the Complaint, KAWS states that it "believes other individuals, whose identities have not yet been discovered, are also liable as joint tortfeasors with the named defendants [and that] [t]heir identities will be the subject of discovery as this case proceeds." [ECF No. 1 at n.1].
[8] Before the Court entered the temporary restraining order, KAWS withdrew its request for an asset restraint and expedited discovery. [ECF No. 14]. In its reply in support of its request for a preliminary injunction, [ECF No. 56], KAWS withdrew its request for injunctive relief in connection with its copyright claim.

## DISCUSSION

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corporation v. McKinney*, 144 S.Ct. 1570, 1576 (2024) (quoting *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, a plaintiff must "establish[] each of the following four prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that an injunction will not disserve the public interest." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). "The burden of persuasion in all four of the requirements is at all times upon the plaintiff." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (internal quotation omitted). A plaintiff must support its request for a preliminary injunction with evidence; "a party is not entitled to preliminary injunctive relief solely on the basis of its naked allegations." *American Airlines, Inc. v. Spada*, No. 23-21844, 2023 WL 8001220, at *2 (S.D. Fla. Nov. 18, 2023) (internal quotations omitted).

**I.      Likelihood of success on the merits.**

The Court finds that KAWS has not established a substantial likelihood of success on the merits of its trademark infringement, counterfeiting, false designation of origin, or Florida unfair competition claims.

    **A.      Trademark Infringement**

        **1.      Direct Infringement**

The Lanham Act prohibits parties, "without the consent of the registrant," from "us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive

. . . ." 15 U.S.C. § 1114(1)(a). Accordingly, "[t]o prevail on a claim of trademark infringement . . . plaintiffs must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred 'in commerce', (4) that the defendants used the mark 'in connection with the sale . . . or advertising of any goods,' and (5) that the defendants used the mark in a manner likely to confuse consumers." *North American Medical Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1218 (11th Cir. 2008).

Printify does not dispute that KAWS holds a valid mark or challenge the likelihood of confusion element. Rather, the primary dispute between the parties is whether Printify used KAWS's trademarks. The Court finds that it did not.

The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade" when "placed in any manner on the goods . . . and the goods are sold or transported in commerce." 15 U.S.C. § 1127. Despite this broad language, courts have drawn a line between passive marketplaces, like eBay and Amazon, and direct sellers of their own wares to consumers, like brick-and-mortar retailers.

"[O]nline marketplaces, like eBay and Amazon, that facilitate sales for independent vendors generally escape Lanham Act liability." *Ohio State University v. Redbubble, Inc.*, 989 F.3d 435, 446 (6th Cir. 2021) (citing *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103, 109 (2d Cir. 2010)). This is, in part, because third-party vendors, such as Amazon and eBay, clearly indicate the source of the products they are selling and do not hold those goods out to be their own. *Id.* at 446. On the other hand, "parties who design and print trademark-infringing goods typically violate the Lanham Act." *Id*. at 446, 448 ("A retailer who sells products directly to a consumer at a brick-and-mortar store is indisputably a seller to whom the Lanham Act applies."). The issue here is where Printify falls on the spectrum between eBay and a party who designs and sells infringing

7

goods. While the Eleventh Circuit has not yet directly addressed the issue with respect to POD providers, several other courts have. The Court finds these cases informative.

In *Redbubble,* the Ohio State University ("OSU") brought Lanham Act claims against another POD provider, Redbubble. 989 F.3d at 441. Like Printify, Redbubble does not design, manufacture, or handle any products on its website. However, "the shipped packages bear [Redbubble's] logo, [] Redbubble handles customer service duties such as returns[,] . . . Redbubble helps market products listed on its website [and] markets those goods as Redbubble products to consumers[,] [and] [w]hen customers receive goods from Redbubble's marketplace, they often arrive in Redbubble packaging and contain Redbubble tags." *Id.* at 440-41. After the district court found, as a matter of law, that Redbubble had not used OSU's trademarks, the Sixth Circuit reversed finding the district court's reading of the Act was too narrow. *Id.* at 451. In discussing what constitutes use, the Sixth Circuit found that "one key distinction between a direct seller who 'uses' a trademark under the Act and a mere facilitator who does not is the degree to which the party represents itself, rather than a third-party vendor, as the seller, or somehow identifies the goods as its own." *Id.* at 448. Ultimately, the Sixth Circuit remanded the action to the district court to determine "factual gaps" as to Redbubble's role in the use of OSU's trademarks including (1) "nature of Redbubble's contractual relationships with third-party manufacturers and shippers"; (2) the "degree to which Redbubble is involved in selecting and imprinting trademark-infringing designs on its products; (3) "details as to Redbubble's involvement in the process for returning goods"; (4) "how Redbubble characterizes its own services"; and (5) "facts about defenses to liability." *Id.* at 451 (internal quotations omitted).

In another POD provider case, *H-D U.S.A. LLC v. Sunfrog, LLC*, Harley Davidson brought claims against SunFrog for using its trademarks. 311 F. Supp. 3d 1000 (E.D. Wisc. 2018). SunFrog, like other POD providers, ran "a website where third parties [could] upload designs and

logos, place them onto clothing, hats, mugs, or other items, and sell them." *Id.* at 1009. SunFrog's customers could share their designs with other customers, and customers could purchase shared designs from SunFrog's "All Art database." *Id.* at 1014. SunFrog printed and shipped the products and placed its own logos on the products or the products' tags. SunFrog advertised and marketed finished products on its website and retained most of the profits from the sale of the goods. In addition, SunFrog "train[ed] and encourage[ed] others" on how to "advertise infringing designs." *Id.* at 1029. The district court granted Harley Davidson's partial motion for summary judgment, finding, as relevant here, that SunFrog's activities constituted "use in commerce" under the Lanham Act because it was "actively involved in the infringing conduct" and "exert[ed] control over nearly every aspect of the advertising, sale, and manufacture of the infringing goods, save designing the mockups." *Id.* at 1030.

Perhaps the most relevant case is Atari Interactive, Inc.'s pending action against Printify, where the primary difference from this case is Printify's alleged use of Atari's trademarks as opposed to the KAWS's trademarks.[9] *Atari Interactive, Inc. v. Printify, Inc.*, No. 23-cv-8926, 2024 WL 4766493, at *1 (S.D.N.Y. Jan. 25, 2024) (hereinafter referred to as *Atari (Printify)*). There, the District Court for the Southern District of New York denied Atari's motion for preliminary injunction, finding Atari failed to establish a likelihood of success on the merits or irreparable harm. *Id.* Analyzing Printify's operations—the same operations at issue here—the court found that "Atari has not shown it is likely to be successful in demonstrating that Printify is 'using' its marks, as opposed to acting as a passive facilitator." *Id.* at 6.

---

[9] The Court previously denied Printify's motion to transfer this action to the Southern District of New York under 28 U.S.C. § 1404(a). However, for purposes of this Motion, the analysis of Printify's operations is the same as in the *Atari (Printify)* action.

9

For the same reasons, this Court finds that KAWS has not shown a likelihood of success on the merits of its direct trademark infringement claim. As to KAWS marks, Printify does not design any of the infringing products, provide infringing artwork to Merchants, maintain a *public* database of infringing artwork, control infringing images appearing on Shutterstock, or directly print any products bearing KAWS's marks. Rather, Printify connects Merchants to third-party printers. Aside from the small number of Merchants who utilize a Printify Pop-Up store, Printify does not sell any products on its website; Merchants sell their custom products from their own marketplaces.[10] Printify does not advertise any products for sale to end consumers on its website. Printify's name does not appear on the products or any shipping materials. And, Printify charges Merchants a flat fee rather than taking a percentage of the profits from products sold. The record, at this time, reflects that Printify is merely a facilitator, like eBay or Amazon, and does not "use" KAWS marks. As a result, KAWS has not met its burden of showing a substantial likelihood of success on the merits on its direct infringement claim.

### 2. Contributory Infringement

"[L]iability for trademark infringement can extend beyond those entities that actually perform the acts of infringement." *Mini Maid Services Co. v. Maid Brigade Systems, Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992). "A claim for contributory trademark infringement . . . has two elements: (1) a person or entity commits direct trademark infringement under the Lanham Act; and (2) the defendant (a) intentionally induces the direct infringer to commit infringement, (b) supplies a product to the direct infringer whom it knows is directly infringing (actual knowledge) or (c) supplies a product to the direct infringer whom it has reason to know is directly infringing (constructive knowledge)." *Luxottica Group, S.p.A. v. Airport Mini Mall*, 932 F.3d 1303, 1312

---

[10] The only evidence in the record of products sold on a Printify Pop-Up store bearing KAWS's marks is the Pop-Up store created by KAWS's counsel.

(11th Cir. 2019) (internal quotations omitted). "In Internet cases, the knowledge needed to establish contributory liability must be specific or particularized; generalized knowledge that a site or service could be used for infringing activity is insufficient." *Evans v. Murkin Stiffs, Inc.*, No. 15-61934, 2016 WL 8793339, at * 7 (S.D. Fla. Mar. 21, 2016) (citing *Tiffany*, 600 F.3d at 107-09). Rather, "[s]ome contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany*, 600 F.3d at 107. "Where a defendant on notice of specific infringement 'undertakes bona fide efforts to root out infringement, . . . that will support a verdict finding no liability, even if the defendant was not fully successful in stopping infringement. But if the defendant decides to take no or little action, it will support a verdict finding liability.'" *Atari (Printify)*, 2024 WL 476493, at * 6 (quoting *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 255 (2d Cir. 2021).

KAWS has not established, at this time, that Printify had actual or constructive knowledge that Merchants were infringing on KAWS's trademarks. First, KAWS sent the Cease-and-Desist letters to the Merchants, not Printify. As a result, KAWS cannot rely on those letters to establish notice to Printify. Moreover, once Printify was on notice of the potentially infringing activity, it took concrete action to remove the infringing marks, including keyword searches, a review of a sample of 10,000 products for infringing marks, and a review of the Merchants' URLs provided by KAWS.[11] This is sufficient to show that Printify made a bona fide effort to halt the infringement. *See Atari (Printify)*, 2024 WL 476493, at * 6; *Atari Interactive Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1109 (N.D. Cal. 2021). Accordingly, KAWS has not established a substantial likelihood of success on the merits of its contributory infringement claim.

---

[11] KAWS's counsel was able to select KAWS images on Printify's website after KAWS filed this action. However, those images were available via the Shutterstock integration. As detailed above, Printify has no control over Shutterstock's library. Moreover, KAWS did not include Shutterstock as a defendant in this litigation; nor does the record reflect that KAWS has filed an independent action against Shutterstock.

**B.     Trademark Dilution, False Designation of Origin, Florida Unfair Competition.**

KAWS also seeks preliminary injunctive relief on its trademark dilution, false designation of origin, and unfair competition claims. To prevail on a trademark dilution claim, a plaintiff must establish, among other things, that a defendant's "use [of a mark] is commercial and in commerce." *PetMed Express, Inc. v. PetMets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004). Similarly, to prevail on a false designation of origin claim, a plaintiff must show "use of the mark in commerce." *Cole-Parmer Instrument Co. LLC v. Pro. Lab. Inc.*, 568 F. Supp. 3d 1307, 1316 (S.D. Fla. 2021). As detailed above, the record does not support a finding that Printify used KAWS's trademarks. And, Florida law unfair competition claims are evaluated in same manner as trademark infringement claims. *See Custom Mfg. and Eng'g. Inc. v. Midway Serv., Inc.*, 508 F.3d 641, 652-53 (11th Cir. 2007) (holding that the analysis is the same for federal trademark infringement and unfair competition under Florida law). As a result, KAWS fails to establish a substantial likelihood of success on its claims for trademark dilution, false designation of origin, and unfair competition.

**C.     Claims Against Berdigans**

"An individual is personally liable [under the Lanham Act] if [he] actively and knowingly caused the infringement." *Edmonson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1164 (11th Cir. 2022) (internal quotation omitted). As detailed above, KAWS failed to establish a substantial likelihood of success on the merits of its infringement claims. Therefore, its request for injunctive relief against Berdigans, based on the same set of facts, necessarily fails. Moreover, KAWS has not presented any evidence that Berdigans was actively involved in any infringement. *See Atari (Printify)*, 2024 WL 476493, at *8 (holding conclusory allegations against Berdigans were "insufficient to show he was a moving, active conscious force behind the alleged infringement.") (internal quotation omitted).

II. **Other Factors**

As the Court finds that KAWS fails to establish a likelihood of success on the merits, it does not address whether KAWS has established a substantial threat of irreparable harm,[12] the balance of harm favors KAWS, or whether the public interest favors injunctive relief.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiff KAWS, Inc.'s *Ex Parte* Motion for Temporary Restraining Order, Asset Restraint, Expedited Discovery, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue, [ECF No. 4], is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of August, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[12] The Court notes that KAWS's argument that it will be irreparably harmed if Printify is not enjoined is not particularly strong. Indeed, KAWS has not pursued any of the Merchants selling the purportedly infringing products or Shutterstock.